CRABTREE INVESTMENTS, INC.
and John Crabtree

v.

AZTEC ENTERPRISES, INC., James C.
Gaspard and Eddie C. Bartee.

Civ. A. No. 79-117-B.

United States District Court,
M. D. Louisiana.

Oct. 26, 1979.

John S. White, Jr., Kennon, White & Odom, Baton Rouge, La., for plaintiffs.

W. Steven Mannear, Baton Rouge, La., for defendant, Aztec Enterprises, Inc.

Conrad S. Adkins, of Cooper & Thompson, Baton Rouge, La., for defendant, James C. Gaspard.

James S. Holliday, Jr., of McCollister, McCleary, Fazio, Mixon & Holliday, and Wallace A. Hunter, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for defendant, Eddie C. Bartee.

## RULING ON MOTIONS

JOHN V. PARKER, District Judge.

This matter was previously before the Court on motions to dismiss the claims of plaintiff, John H. Crabtree, individually, and, alternatively, for summary judgment, upon the basis of lack of subject matter jurisdiction. On June 11, 1979, the Court dismissed the individual claims against all three defendants but granted Crabtree the right to move to reinstate the claims upon establishing an independent jurisdictional basis for such claims.

With leave of Court, plaintiffs have filed a supplemental and amended complaint further spelling out the alleged basis for Crabtree's individual claims. To that motion, defendants, Aztec Enterprises, Inc., and James C. Gaspard, have filed motions to dismiss for lack of subject matter jurisdiction; and defendant, Eddie C. Bartee, has filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Affidavits have been filed by Crabtree, Gaspard and Bartee which the Court has considered. Accordingly, the Rule 12(b) motions will be treated as motions for summary judgment and disposed of as provided for in Rule 56.

Crabtree Investments and Crabtree individually filed this action alleging jurisdiction by virtue of the provisions of Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), particularly, Section 10 of the Act (15 U.S.C. § 78j) and S.E.C. Rule

10b–5 (17 C.F.R. § 240.10b–5). The complaint, as supplemented and amended, alleges that Aztec Enterprises, James Gaspard, its former president, and Bartee, Aztec's accountant, employed alleged manipulative and deceptive devices in connection with the sale of some 2,000 shares of stock in Aztec to Crabtree Investments. It is alleged that Crabtree Investments bought the stock on or about April 15, 1978, and that during the course of discussions there were many misrepresentations, oral and written, as to the financial condition and affairs of Aztec. Further, plaintiffs allege that at the time of the stock transfer, Crabtree individually agreed that he would execute a continuing guaranty agreement covering loans to be made to Aztec, in consideration of which Aztec and Gaspard were to pay him the sum of $1,200 per month. Crabtree alleges that on May 15, 1978, he signed a continuing guaranty to obtain financing of up to $100,000 for Aztec from Capital Bank & Trust Company of Baton Rouge and that both the oral agreement and the written guaranty constitute "securities." Plaintiffs claim, as an alternative ground for jurisdiction, that Bartee was an "investment adviser" to plaintiffs as that term is defined in the Investment Advisers Act (15 U.S.C. § 80b–6) and S.E.C. Rule 206 (4)–1. 17 C.F.R. § 275.206 (4)–1. Further, plaintiffs allege that Crabtree was, at all pertinent times, the sole shareholder of the corporate plaintiff, Crabtree Investments, and that the transfer of stock on April 14, 1978, the oral agreement relating to a future continuing guaranty, and the written continuing guaranty agreement dated May 15, 1978, were part and parcel of the same transaction. Finally, plaintiffs allege that Crabtree was called upon to pay some $90,000 of Aztec's debts, which sum he is entitled to recover, and that Crabtree Investments is entitled to recover the price paid for the stock.

Plaintiffs do not set forth a claim which is cognizable under the provisions of the Investment Advisers Act. Although the supplemental and amended petition contains a declaration that Bartee was acting as an "investment adviser," the allegations of the original complaint, together with the affidavits on file, make it plain that he was simply a certified public accountant, acting as such throughout the transaction. The affidavits make it clear that he was not in the investment advisory business for compensation and that any information or advice he furnished to Crabtree Investments or to Crabtree individually was solely incidental to his practice as an accountant. The plaintiffs may not, under Rule 56(c), simply rely upon the general allegations of the complaint, where affidavits have been filed setting forth specific facts, but they must come forward with affidavits alleging specific facts showing that there are genuine issues of material fact for trial.

Here, 15 U.S.C. Section 80b–2(11) specifically defines "investment adviser" as:

> "[A]ny person who, *for compensation*, engages *in the business of advising others*, . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as *part of a regular business*, issues or promulgates analyses or reports concerning securities; *but does not include* . . . (B) any lawyer, accountant, engineer, or teacher *whose performance of such services is solely incidental to the practice of his profession* . . .." (Emphasis supplied)

Any representations made to plaintiffs by Bartee, according to the affidavits on file and according to the allegations of the original complaint, were made in his capacity as the accountant for Aztec and were incidental to the practice of that profession. Under these circumstances, he is not an "investment adviser" and plaintiffs state no claim under the Investment Advisers Act.

Plaintiffs further argue that the transfer of the shares in Aztec, the April 14th oral agreement relative to the continuing guaranty, and the written continuing guaranty agreement are all part and parcel of the same transaction and that the continuing guaranty agreement constituted a "security" within the meaning of 15 U.S.C.

§ 78c(a)(10), alleging that Crabtree individually became a "seller" of a security when he signed the continuing guaranty agreement.

■■ Plaintiffs argue that a continuing guaranty agreement is commonly known as a "security" agreement and therefore falls within the statutory definition. It is correct that a continuing guaranty agreement is frequently considered as a "security device" in that it secures the obligation of another, but it is clearly not an "investment contract" within the meaning of the statute. Plaintiffs urge that the Court consider the jurisprudence that it is the "economic reality" of the transaction rather than the particular form to which the Court should look. See *S.E.C. v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979). While the various aspects of the Aztec affair may have constituted one scheme or plan, there are several distinct transactions involved. When the "economic realities" are viewed, all the parts do not involve "securities" as defined by 15 U.S.C. § 78c(a)(10). Specifically, Crabtree Investments made an investment of money in a common enterprise with profits to come solely from the efforts of others when it bought 2,000 shares of Aztec. On the other hand, Crabtree individually did not make an investment of money in a common enterprise with profits to come solely from the efforts of others when he signed a personal continuing guaranty of Aztec's obligations. Plaintiffs do not set forth in the supplemental and amended complaint a 10b–5 claim on behalf of Crabtree individually.

Plaintiffs finally argue that, since Crabtree is the sole shareholder of the Crabtree corporation, the Court should ignore the corporate entity and consider Crabtree and his corporation as one entity which was attracted to a single economic transaction in a common venture based upon defendant's representations of profits to be derived from the efforts of others. As noted above, plaintiff Crabtree and "his" corporation may consider this affair to be "one economic transaction," but there are separate and distinct parts which must be viewed; and misrepresentation in connection with the sale of stock to one entity and in connection with obtaining a continuing guaranty from another entity does not convert the guaranty into a "security" as defined in 15 U.S.C. § 78c(a)(10).[1]

■■ We have found no authority and plaintiffs have cited none which would support the proposition that a sole shareholder may ignore the corporate entity when it suits his convenience. On the contrary, the jurisprudence which we have found indicates that the corporate entity may be ignored only where a third party has been led to take action to his detriment by reason of actions of the corporation and its sole or majority shareholders and equity demands that the corporate entity be ignored. A similar argument was made in *Schenley Distillers Corporation v. United States*, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946). The Supreme Court commented:

"Appellant urges that we disregard the separate corporate entities which are to pay compensation to appellant for the transportation and treat the corporations controlled by appellant's parent as one single commercial enterprise. While corporate entities may be disregarded where they are made the implement for avoid-

---

1. 15 U.S.C. § 78c(a)(10) provides:

"(10) The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

ing a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person. One who has created a corporate arrangement, chosen as a means of carrying out his business purposes, does not have the choice of disregarding the corporate entity in order to avoid the obligations which the statute lays upon it for the protection of the public." (66 S.Ct. at 249)

See also *Olympic Capital Corporation v. Newman*, 276 F.Supp. 646 (C.D.Cal.1967).

While the allegations of the complaint and supplemental and amended complaint indicate the desirability, in terms of judicial and lawyer efficiency, of disposing of the various claims asserted in this action in one judicial proceeding, this Federal Court lacks jurisdiction to hear the individual claims by Crabtree and cannot create jurisdiction.

For the foregoing reasons:

IT IS ORDERED that the motions to dismiss, treated as motions for summary judgment, filed herein on behalf of defendants, Aztec Enterprises, Inc., John C. Gaspard and Eddie C. Bartee, are GRANTED, and the claims made by John H. Crabtree, individually, are hereby DISMISSED.