**CRABTREE INVESTMENTS, INC. and John Crabtree**

v.

**AZTEC ENTERPRISES, INC., James C. Gaspard and Eddie C. Bartee.**

**Civ. A. No. 79–117–B.**

United States District Court, M. D. Louisiana.

Jan. 22, 1980.

John S. White, Jr., Kennon, White & Odom, Baton Rouge, La., for plaintiffs.

W. Steven Mannear, Baton Rouge, La., for defendant, Aztec Enterprises, Inc.

Conrad S. Adkins of Cooper & Thompson, Baton Rouge, La., for defendant, James C. Gaspard.

James S. Holliday, Jr., of McCollister, McCleary, Fazio, Mixon & Holliday, Wallace A. Hunter, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for defendant Eddie C. Bartee.

## DECISION AND ORDER

JOHN V. PARKER, Chief Judge.

Crabtree Investments, Inc., and John Crabtree, individually, have filed this suit alleging jurisdiction by virtue of the Securities Exchange Act of 1934 and the Investment Adviser's Act, 15 U.S.C. §§ 78aa, 78j, 80b–1.

The factual allegations of the complaint and the amended complaint are detailed in the prior opinion dated October 26, 1979 (479 F.Supp. 448). Briefly, plaintiffs claim that Crabtree Investments, Inc., was induced to buy 2,000 shares of Aztec Enterprises, Inc., by its president, James C. Gaspard, and its certified public accountant, Eddie C. Bartee, and that Bartee was an active finder and promoter of the transaction acting as an "investment adviser." Crabtree, individually, was the sole stockholder of Crabtree Investments, Inc., and at the same time that the shares were transferred, he orally agreed to give a continuing guaranty for contemplated loans to be made by others to Aztec. Crabtree, individually, was to be paid $1,200 per month for the loan of his credit; and subsequently, he did execute a written guaranty for Aztec, guaranteeing repayment of loans to the corporation made by Capital Bank and Trust Company of Baton Rouge. Plaintiffs allege various manipulative and deceptive devices, misrepresentation and fraudulent conduct in connection with the transfer of the stock and the execution of the continuing guaranty agreement. Aztec failed to pay the bank and Crabtree, individually, had to pay Aztec's obligations in the amount of $90,295.18; and he seeks to recover that amount from Aztec as well as a virile share from Gaspard, who co-signed the guaranty but has not paid. Crabtree Investments, Inc., claims a loss of $80,000 on the 2,000 shares of Aztec, and it seeks to recover that amount from Aztec, Gaspard and Bartee, in solido.

Crabtree claims that the continuing guaranty is a "security" under the Securities Exchange Act and Rule 10b–5, and, as the "seller" of that "security," he seeks the jurisdiction of this Court over his individual

claims, and he further claims jurisdiction over Bartee under the Investment Advisers Act, 15 U.S.C. § 80b–1, et seq.

In the meantime, following the Court's decision of October 26, 1979, dismissing Crabtree's individual claims, Gaspard, individually, has filed a counterclaim against Crabtree Investments, Inc., alleging that he has a Rule 10b–5 claim because he was the majority shareholder of Aztec and that the issuance of the additional 2,000 shares to Crabtree Investments, Inc., upon false representations, manipulative devices, et cetera, diluted his ownership and caused him to lose $547,406.

This matter is currently before the Court on (1) John Crabtree's motion for reconsideration of the Court's order dated October 26, 1979, dismissing Crabtree's individual claims,[1] and (2) plaintiffs' motion to dismiss the counterclaim of James Gaspard. On December 7, 1979, the Court heard oral arguments on these motions and instructed the attorneys to file memoranda of law by January 4, 1980, addressing, in particular, the issue of pendent jurisdiction. The Court, having received and considered these memoranda, the record, and the memoranda presented heretofore, has decided to deny plaintiffs' motion for reconsideration and to grant the motion to dismiss Gaspard's individual claims.

## I.

### John Crabtree's Claims Under the Securities Exchange Act of 1934

■ John Crabtree contends that he has standing to sue under the Securities Exchange Act of 1934 because he is a defrauded "buyer" or "seller" of a "security," 15 U.S.C. § 78j; Rule 10b–5.

There are two transactions involved in this case. The first is one that the parties and the court all agree falls within the scope of a 10b–5 action, namely, Aztec, Inc., sold Crabtree Investments, Inc., 2,000 shares of stock and thus Crabtree Invest-

ments, Inc., is clearly a "buyer" of "securities." The second transaction involved is that of Crabtree, individually, executing a continuing guaranty to secure loans to Aztec up to the limit of $100,000.

Crabtree's argument is basically that (1) John Crabtree was a seller of securities (i. e., the continuing guaranty contract) or (2) since the two transactions involved are interrelated and because John Crabtree is the sole shareholder of Crabtree Investments, Inc., his individual claims under the continuing guaranty contract fall within the scope of 10b–5.

The first prong of John Crabtree's argument fails because a continuing guaranty agreement does not fall within the definition of a "security" under the Securities Exchange Act of 1934:

"(10) The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit, for a security, or in general, *any instrument commonly known as a 'security'*; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." (15 U.S.C. 78c(a) [10]—Emphasis added)

The continuing guaranty can fall within this definition only if it were considered an "instrument commonly known as a security" or an "investment contract." The Supreme Court bids us, in the resolution of the "security" issue to disregard form and to

---

1. Until final decree, the district court retains jurisdiction to modify or rescind a prior interlocutory order, Fed.R.Civ.P. 54(b); *Lindsey v.*

*Dayton-Hudson Corp.*, 592 F.2d 1118 (10th Cir. 1979).

place emphasis upon the "economic realities" of the transaction. *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *S. E. C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Our other mentor, the Fifth Circuit, declares that it is the investment or the commercial nature of a transaction which controls the application of the Securities Exchange Act. *McClure v. First National Bank of Lubbock*, 497 F.2d 490 (5th Cir. 1974), cert. den. 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402. Both higher courts tell us that the fundamental purpose of the securities acts is to protect the investor in a profit-sharing agreement or investment contract. *McClure, supra* at 495; *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621 (1975). Both courts also agree that the distinguishing feature of a securities transaction is that it is an investment where one parts with his money in the hope of recovering profit from the efforts of others "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." (95 S.Ct. at 2060)

In *Forman*, the Supreme Court was faced with the issue of whether shares of stock which entitled purchasers to lease an apartment in a state subsidized and supervised nonprofit housing cooperative were "securities." In that case, the Supreme Court states, "We perceive no distinction, for present purposes, between an 'investment contract' and an 'instrument commonly known as a security.'" (95 S.Ct. at 2060) Thus, the Court found the test to determine whether an instrument is "commonly known as a security" the same as that given above for "investment contracts." For present purposes the same test should be applied to determine if the continuing guaranty of Crabtree is an "investment contract" or if it is an instrument "commonly known as a security."[2]

Applying the *Forman* test, the continuing guaranty is clearly not a security. John Crabtree did not make an *investment* of money in a common enterprise with *profits* to come solely from the efforts of others.

Crabtree individually and separately executed one specific guaranty agreement covering specific loans by a specific bank made to one corporation, Aztec. His consideration for so doing is alleged by him to be the sum of $1,200 per month. While it might be assumed that the efforts of Aztec would be required to pay the consideration to Crabtree, as well as to repay the loan to Capital Bank, that is so only in the sense that Aztec's efforts were involved in all of its corporate endeavors. Crabtree did not make an investment; he made a loan with a fixed and specific rate of return and that return was not dependent upon profits from the efforts of others. Aztec owed the $1,200 per month and owed the bank, regardless of its profits. The notion that a continuing guaranty is a "security" under the facts here alleged bring to mind the language of the Ninth Circuit in *Amfac Mortgage Corp. v. Arizona Mall of Tempe*, 583 F.2d 426 (9th Cir. 1978):

> ". . . This is yet another attempt to convert the securities laws into something which they are not. The securities laws do not afford general relief when commercial loans turn out to have been unwisely made, nor are they a source of general federal jurisdiction." (583 F.2d at 428)

█ The second prong of John Crabtree's argument is that, in light of the "economic realities" involved, i. e., the two transactions were really "part and parcel of one plan of investment" and the fact that Crabtree is the sole shareholder of Crabtree Investments, Inc., his claims fall within the scope of 10b–5. As noted, "form should be disregarded for substance and the emphasis should be on economic reality," *Forman, supra*, 95 S.Ct. at 2058. The "economic reality" here leads to the conclusion that

---

2. "Security device" is a good civil law term meaning a thing or obligation which secures payment of another obligation such as a mortgage, which secures payment of a promissory note. While a continuing guaranty is commonly considered a "security device," this does not constitute a "security" within the meaning of the Act.

the continuing guaranty agreement is an independent part of any over-all scheme or plan being conducted by the plaintiffs and the defendants and that it was not a "security." While Crabtree stresses "economic realities," his argument, in effect, is that he has sufficient "nexus" with Crabtree Investments, Inc.'s purchase of the 2,000 shares of Aztec stock that he should fall within the protection of 10b–5.

■ The Seventh Circuit adopted a "nexus" approach in *Eason v. General Motors Acceptance Corporation*, 490 F.2d 654 (7th Cir. 1973), cert. den. 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312. The Fifth Circuit has never followed the *Eason* approach, but has consistently adhered to the "buyer"/"seller" *Birnbaum* rule.[3] I cannot, therefore, accept this line of argument. The "buyer"/"seller" rule loses all meaning when it is stretched to encompass anyone who has any significant connection with a purchase of securities. For the same reason, the fact that Crabtree was the sole shareholder of Crabtree Investments, Inc., is not controlling. Moreover, as the Court previously held, a sole shareholder may not ignore the corporate entity whenever it suits him, *Schenley Distillers Corporation v. United States*, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181 (1946); *Olympic Capital Corporation v. Newman*, 276 F.Supp. 646 (C.D.Cal.1967); *Marshall v. Coastal Growers Ass'n*, 598 F.2d 521 (9th Cir. 1979) at 525.

## II.

### *Plaintiffs' Claims Under the Investment Advisers Act of 1940*

■ The United States Supreme Court has recently held in *Transamerica Mortgage Advisors, Inc. v. Lewis*, —— U.S. ——, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), that there is a very limited private right of action under the Investment Advisers Act:

> "[W]e hold that there exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment

advisers contract, but that the Act confers no other private causes of action, legal or equitable." (100 S.Ct. at 249)

Since neither plaintiff has alleged the existence of an investment advisers contract, much less has sought rescission of such a contract, we find that plaintiffs have failed to state a cause of action under the Investment Advisers Act, 15 U.S.C. § 80b–1, et seq.

## III.

### *Defendant James Gaspard's Counterclaim Against the Plaintiffs*

■ Plaintiffs have moved the Court to dismiss James Gaspard's counterclaim against them on the grounds that Gaspard is neither a "buyer" nor "seller" of securities. Gaspard alleges in his counterclaim that Aztec Enterprises, Inc., sold 2,000 shares of stock to Crabtree Investments, Inc., and that Gaspard, as president of Aztec and majority shareholder, approved the sale. Gaspard claims that the plaintiffs acted fraudulently and made misrepresentations in relation to the sale; and, consequently, Gaspard suffered damages in loss of funds invested and loaned to Aztec and loss of future dividends, earnings and profits.

Gaspard has failed to state a 10b–5 claim because he has not alleged that he was a buyer or seller of securities. Gaspard cites in support of his contention *Eason v. General Motors Acceptance Corporation, supra.*

While it is correct that the Supreme Court denied writs in *Eason*, it is clear that the *Birnbaum* rule has consistently been applied in the Fifth Circuit and that the *Eason* rule of nexus has more than once been distinguished, *Smallwood v. Pearl Brewing Company*, 489 F.2d 579 (5th Cir. 1974) at 589–590; *Sargent v. Geneso, Inc.*, 492 F.2d 750 (5th Cir. 1974) at 763; *Reid v. Hughes*, 578 F.2d 634 (5th Cir. 1978). Thus, *Eason* is not good authority in this Circuit.

---

**3.** See *Smallwood v. Pearl Brewing Company*, 489 F.2d 579 (5th Cir. 1974) at 589–590; *Sargent v. Geneso, Inc.*, 492 F.2d 750 (5th Cir.

1974) at 763. The *Birnbaum* rule is that only a purchaser or seller of a security has standing to sue under Rule 10b–5.

■ Additionally, Gaspard's counterclaim is deficient in that he is, in effect, claiming damages for dilution of his equity interest in Aztec. This is not a cognizable element of damages under 10b–5, *Wolf v. Frank*, 477 F.2d 467 (5th Cir. 1973):

> "In short, a reading of *Swanson [Swanson v. American Consumer Industries, Inc.*, 7 Cir. 1969, 415 F.2d 1326] with *Herpich [Herpich v. Wallace*, 5 Cir. 1970, 430 F.2d 792] establishes that plaintiffs do not have standing to seek individual damages for the dilution of equity interest caused by the NIB–IGB stock exchange because plaintiffs were neither purchasers nor sellers in connection with that transaction." (477 F.2d at 478)

James Gaspard has failed to sufficiently allege a 10b–5 action.

### IV.

### *Pendent Jurisdiction*

The Court has previously expressed the opinion that, while John Crabtree has failed to establish an independent federal jurisdictional basis,[4] it would be desirable to hear his state claims in furtherance of judicial and lawyer efficiency. It was with this in mind that it was suggested that the attorneys prepare supplemental memoranda addressing, in particular, the issue of "pendent" jurisdiction or "pendent party" jurisdiction.

The joining of a *party* not otherwise subject to federal jurisdiction is sometimes referred to as "pendent party" jurisdiction (as opposed to ancillary or pendent jurisdiction which usually connote the joining of a *claim* of a party who has asserted an independent federal jurisdictional basis), *Kiss v. Tamarac Utilities, Inc.*, 463 F.Supp. 951 (S.D.Fla. 1978); *Skinner v. American Oil Co.*, 470 F.Supp. 229 (S.D.Iowa 1979). Therefore, it is appropriate to consider whether John Crabtree may be joined as a pendent party

for the purpose of bringing his state law claims against the defendants.[5]

■ Before exercising pendent party jurisdiction, the Court must determine not only whether Article III of the Constitution allows it, but also whether Congress has expressly or impliedly negated its existence, *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Article III permits the joining of a "pendent party" when his claim shares a "common nucleus of operative fact" with the federal claim asserted and it is one that would be expected to be tried in the same lawsuit, *United Mine Worker v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). To determine if Congress has expressly or impliedly denied the existence of pendent party jurisdiction, one must turn to the specific underlying jurisdictional statute, *Owen, supra.*

■ Then after the Court has determined that pendent party (or pendent claim) jurisdiction exists, the Court must consider certain discretionary factors such as (1) judicial economy; (2) fairness to the litigants; (3) convenience to the parties and witnesses; (4) whether the federal and state claims could be brought together in state court, i. e., whether the federal courts have exclusive jurisdiction over the federal claim; (5) if the federal court would be called upon to resolve difficult questions of state law for which there is little or no state authority; and (6) whether the effect of combining the several claims and defenses of the parties would unduly complicate the case for the jury and the Court, *Skinner, supra; Kiss, supra.*

John Crabtree's state law claims share a "common nucleus of operative fact" with Crabtree Investments, Inc.'s 10b–5 claims. If the federal courts did not have exclusive

---

4. Diversity has not been alleged.

5. While John Crabtree has alleged state law claims in alternative to his 10b–5 claim, James

Gaspard has made no attempt to allege alternative state law claims. Therefore, there is no need to consider the possibility of Gaspard coming into this Court as a pendent party.

jurisdiction[6] over the 10b–5 claim, one would expect Crabtree Investments, Inc.'s federal claim and John Crabtree's state claims to be tried in state court together. Thus, Article III is met.

It is not as easy to determine whether Congress has expressly or impliedly negated the use of pendent party jurisdiction under the Securities Exchange Act of 1934. The particular jurisdictional statutes involved are 15 U.S.C. §§ 78aa, 78j. While Congress intended to limit 10b–5 claims to buyers and sellers of securities, we doubt that Congress intended to *deny* those with related state law claims the opportunity to have them heard in federal court. Most likely, Congress did not intend to *deny or to allow* parties with state law claims closely related to a 10b–5 action to assert them in federal court which has exclusive jurisdiction over 10b–5 claims. While Congress did not expressly or impliedly *deny* pendent or pendent party jurisdiction in 10b–5 cases, this is not essential to this decision because after considering the discretionary factors listed above, the exercise of pendent party jurisdiction would be inappropriate.

■ This action was filed on February 28, 1979. Since that date, the Court has considered several motions relative to subject matter jurisdiction over the claims of the parties. Most important, since the last order dated October 26, 1979, the Court has been informed by the attorneys that plaintiffs have filed more than one suit in state court concerning John Crabtree's claims, one of which has been brought to judgment. In light of the time already spent in state court and in this Court on this matter, considerations of judicial economy, fairness and convenience to the parties and witnesses require the Court to exclude John Crabtree's individual claims from this lawsuit.

For the reasons stated above, the motion for reconsideration of the Court's order dated October 26, 1979, is DENIED and John Crabtree's individual claims are DISMISSED from this action. Plaintiffs' motion to dismiss the counterclaim of James Gaspard is GRANTED and the individual claims of Gaspard are DISMISSED.