Tina ALLOR, Vincent Barcich, Randall Berner, Mary Blakely, Helen Bocknak, Lillian Bommarito, Michael K. Brown, William Brown, Brenda Browning, Henry Bubrowski, Margaret Causby, Michael D. Causby, Ronald Caza, Stephanie Caza, Violet Cooper, Nora Christian, Joan Chrzanowski, Gloria Danik, Ben Delfin, Esther Desaussure, Dominick De Tomaso, William Drumgold, Jeannie Fontella, Elaine Fontera, Bill Gersch, Christine Goolsby, Pat W. Grant, Sandra J. Gray, Jeannie Gremlich, Toni R. Griffin, Cathy Hall, Harold Hall, Karmen Hall, Bruce S. Hamilton, Juanita Hamilton, Michael Haranczak, Amelia Harling, Kay Harrington, Lee Harrison, Phyllis Harrison, Willie Hart, Gregory R. Hershberger, Bess Hollenbeck, Margaret Hydo, Elsie Karasinski, Bill Kelsey, Ed Kessler, Eddie King, James Klemoszemski, Helen Koncyk, Raymond Kott, Leonard Lake, Raymond Leopold, Jack Lucido, Essie Luckett, Harry Miller, Dan Moore, Donna Moore, Darlene F. Mullins, Ken Newton, Gail Nichol, Williamina Niezguski, Ralph Pardon, Joe Peltier, Deborah Perry, Martin Peters, Joe Peterson, Joanna Petlock, David L. Pohl, Sam Purpura, Geraldine Reaves, Neal Rice, Vernell Riley, Jim Rose, Tania M. Sadler, Claire Salls, Gail Sanders, Guiseppe Scianimanico, Jerry Scott, Gary Simon, Jeff Simon, John Simon, Sr., John Simon, Jr., Denise Sklar, Dewey Smith, Jr., Patricia Smith, William Sperry, John Standard, Ken Stanic, Steve Steinetz, Virginia Stepka, Joyce E. St. Onge, Janine Stratton, Aletha Suchy, Peter Szadyr, Elizabeth Tanase, Barbara Terrace, Gloria J. Thomas, Diane Travis, Patsy L. Travis, Elsie Vamderhedge, Ronald Vansickle, Linda Wallace, Melvin Wendorf, Theresa V. Wendorf, Phillip Werner, Janella Whitefield, Bruce Wiese, Helen White, Leeann Young, Golda Young, Mardelle Young, Roy Neal, Kenneth Stanic, Calvin Cardwell, Ernest Walker, Johnnie Jones, Flora Plasencia, Dorothy Walters, Lucille Tumbarella, Personal Representative for the estate of Tumbarella, Deceased, Agnes Lobaido, Personal Representative of the Estate of Sam Lobaido, Deceased, and Neva Simon, Personal Representative for the Estate of James Simon, Deceased, Plaintiffs,

v.

AMICON CORPORATION, Electrotools, Inc., Michlin Diazo Products Corporation, Penetone Corporation, Swen Sonic Corporation, Detrex Chemical Industries, Inc., Carborundum Company, Inc., Aluminum Company of America, Great Lakes Minerals Company, Fabricon Corporation, Stecom Corporation, Du Bois Chemicals, Martin Marietta, Goodyear Tire and Rubber Company, 3M Corporation, Monsanto Company, Rohm and Haas Company, Allen Products Corporation, Ethyl Corporation, Owens/Corning Fiberglass Corporation, Crown Industrial Products Company, Celanese Chemical Company, Wedron Silica Company, Arco Chemical Company, Master Chemical Corporation, Riber Resin Corporation, Witco Corporation, Gage Products Company, Bendix Corporation, Facet Enterprises, Inc., Detroit Edison Company, Defendants.

Civ. A. No. 85-CV-5197-DT.

United States District Court, E.D. Michigan, S.D.

March 25, 1986.

Kay Honigman-Singer, Detroit, Mich., Norman Landau, New York City, for plaintiffs.

Bernard P. McClorey, Ronald G. Acho, Susan D. Nelson, T. Joseph Seward, Livonia, Mich., for Facet and Bendix.

Richard J. Tonkin, C.F. Boyle, Detroit, Mich., for Good Year Tire and Ethyl Corp.

Jack M. Abella, Detroit, Mich., for Detroit Edison.

Timothy D. Wittlinger, Linda S. Walton, Detroit, Mich., for Marietta.

John E.S. Scott, Richard L. Caretti, Detroit, Mich., for Monsanto Co.

J. Steven Johnston, Troy, Mich., for Swen Sonic.

Herschel Fink, George W. Steel, Detroit, Mich., for Detrex Ind.

Sheldon Miller, Eric D. Geller, Detroit, Mich., for Gage Products.

Steven M. Hickey, Detroit, Mich., for Alcoa.

Michael A. Rajt, Detroit, Mich., for Great Lakes Minerals Corp.

Sheila Mooney, Birmingham, Mich., for Allen Products.

David T. Rogers, Detroit, Mich., for Michlin Diazo.

Thomas Herrman, Birmingham, Mich., for Swen Sonic.

Jay Brant, Detroit, Mich., for 3M and Celanese.

Thomas Meyers, Detroit, Mich., for Fabricon.

Ronald Wagner, Detroit, Mich., for Owens/Corning.

J.R. Zanetti, Jr., Southfield, Mich., for Great Lakes.

Dennis G. Bonucchi, Detroit, Mich., for Wedron Silica.

William Kahn, Troy, Mich., for Rohm & Haas.

Robert Roth, Bloomfield Hills, Mich., for Penetone and Stecom.

Eric Clay, Detroit, Mich., for Amicon.

Boleslaus Stanczyk, Detroit, Mich., for Du Bois Chemical.

Bruce M. Bieneman, Grand Rapids, Mich., for Witco.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

This is a toxic tort action brought by 122 plaintiffs against 31 defendants. The basic allegation is that the plaintiffs were negligently and/or intentionally exposed to toxic and hazardous chemicals at their workplace

for a number of years. Among the defendants are the Bendix Corporation and Facet Industries, which during the period at issue owned the facility where the plaintiffs worked. They are charged with fraudulent misrepresentation as to the safety of the plant, intentional infliction of emotional distress and battery. The remaining defendants are the manufacturers and distributors of the toxic substances to which the plaintiffs were allegedly exposed. This action was originally brought in state court, but was removed to this court by Bendix and Facet. An order to show cause was issued by the court as the presence of a federal question was not apparent on the face of the plaintiffs' complaint and there was an absence of complete diversity between the parties. Subsequently, the plaintiffs filed a motion to remand. During the hearing on these issues, this court expressed concern as to its jurisdiction over the non-employer defendants, and requested briefs from the parties on the issue of pendent party jurisdiction.

The first issue is whether the plaintiffs' claims against Bendix and Facet "arise under" the laws or the Constitution of the United States. 28 U.S.C. § 1441(b) states:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Defendants Bendix and Facet argue that plaintiffs' complaint "arises under" federal law because it is preempted by § 301 of the Labor Management Relations Act.[1] The relationship between the plaintiffs and Bendix and Facet ("defendants") was governed by a collective bargaining agreement for most of the period at issue in this lawsuit. Defendants contend that their duties as to employee safety were governed by the union contract and that therefore this suit should be determined by reference to federal labor law. Plaintiffs respond that their claims are purely state law tort claims, hence not removable.

A defendant may not remove a case to federal court unless the plaintiff's complaint on its face establishes that the case arises under federal law. *Guilly v. First National Bank of Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). This is otherwise known as the "well pleaded complaint" rule. Generally, federal preemption, an issue raised by the defendant, cannot be a basis for removal jurisdiction. *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 14, 103 S.Ct. 2841, 2849, 77 L.Ed.2d 420 (1982); *Taylor v. General Motors Corp.*, 763 F.2d 216 (6th Cir.1985). However, a plaintiff may not defeat removal by failing to plead necessary federal questions in a complaint. *Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).[2] In *Avco*, the Supreme Court held that a suit by an employer against a union alleging violations of the collective bargaining contract was removable because it arose under § 301 even though it acknowledged that the petitioner had plead an adequate claim for relief under state law. In a recent decision interpreting *Avco*, the Supreme Court said:

> The necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state

---

1. Suits for violation of contracts between an employer and a labor organization representing employees in an industry effecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185.

2. One court has said that "[a]lthough the court is not free to second guess the plaintiff's chosen form of pleading, it is entitled to assure itself that the plaintiff has not by 'artful pleading' sought to defeat defendant's right to a federal forum." *Salveson v. Western States Bankcard Ass'n.*, 525 F.Supp. 566, 572 (N.D.Cal.1981), *aff'd* in part and *rev'd* in part, 731 F.2d 1423 (9th Cir.1984).

cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

*Franchise Tax Bd.*, 463 U.S. at 23–24, 103 S.Ct. at 2853–54 (1982). Thus pursuant to *Avco* and *Franchise Tax*, if a defendant successfully asserts that a state claim is pre-empted by § 301, it is removable in spite of the general prohibition against removal on the basis of preemption.

The Supreme Court has recently held that where the resolution of a state law claim is substantially dependent on the analysis of the terms of a collective bargaining agreement, that claim must be treated as either a § 301 claim, or dismissed as preempted by federal labor law (if brought in state court). *Allis-Chalmers v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Lueck*, an employee brought a state law tort action (in state court) against an employer and insurer for bad faith handling of a disability claim. The insurance disability plan had been collectively bargained for and was fully funded by the employer and administered by the insurance company. The agreement established a special three part procedure to settle disability grievances, administered by a joint union-employer committee. The Supreme Court held that the claim was pre-empted by federal contract labor law even though the action sounded in tort.

The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also required that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Lueck*, 105 S.Ct. at 1911. The court continued:

Our analysis must focus, then, on whether the [state] tort action ... as applied here confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contracts. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.

*Id.* at 1912. The court concluded that the tort claim for bad faith handling of an insurance claim could only be resolved by reference to what obligations were created by the collective bargaining agreement and hence pre-empted by federal law.

The court did note that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law" *Lueck*, 105 S.Ct. at 1911. The court said: "We pass no judgment on whether an independent, nonnegotiable, state-imposed duty which does not create similar problems of contract interpretation would be pre-empted under similar circumstances." *Lueck, Id.*, at 1914, n. 11. The Fourth Circuit has held that where the employees brought a state action for unpaid wages, and that matter could be resolved without reference to the collective bargaining agreement, the action was not removable because the federal issue was only injected by way of the defendant's counterclaim. *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272 (4th Cir.1985). The Sixth Circuit has

held that a worker's compensation insurer's contribution action alleging that a union breached its duty, arising under a collective bargaining agreement, to provide safety services to its members were pre-empted by § 301. *Michigan Mutual Ins. Co. v. United Steelworkers*, 774 F.2d 104 (6th Cir.1985). The determining factor was that the collective bargaining unit was the origin of the union's duty to provide safety services.

Returning to the facts of this case, Count 5 (paragraphs 131–142) alleges that defendants Bendix and Facet fraudulently misrepresented the safety of the environment in which the plaintiffs worked, thus exposing them to toxic substances. In paragraphs 132(d) and 139(d) the plaintiffs allege that the defendants created the facade of a safe work environment so that the plaintiff would not request any additional safety measures be taken. In subsection (e) of those two paragraphs, they allege that the defendants failed to comply with federal regulations (the precise regulations are not identified). The resolution of Count 5 is "substantially dependent" upon the analysis of the collective bargaining agreement.

Article 1 of the collective bargaining agreement stated that the purpose of the collective bargaining agreement was, *inter alia*, to govern working conditions. Article 22 of the agreement stated as follows:

(116) The Company shall continue to make reasonable provisions for the safety and health of the employees during the hours of their employment by providing protective devices and other equipment necessary to protect the employees from injury and sickness.

(117) If a dispute shall arise regarding the necessity of certain protective devices and other equipment or if an employee has good reason to believe that an assigned job may be dangerous to life or limb, the foreman and the appropriate Union representative may be notified immediately.... [the remainder of this paragraph sets forth the procedure by which safety issues are to be settled, including binding arbitration].

Just as *Lueck* held that the defendants' obligation as to how insurance claims would be handled could only be established by reference to the collective bargaining contract, so in this case the extent of Bendix and Facet's obligation to inform the plaintiffs about the safety of the work environment requires interpretation of Article 22 of the collective bargaining agreement.

■ The defendants obligated themselves to make "reasonable provisions" for the health and safety of the plaintiffs. Any claim that the defendants fraudulently misrepresented the safety of the plant would necessarily require the interpretation of this contract language, which set forth the obligations of the defendants. This is implied in the complaint, which alleges that if the defendants had been more forthcoming, the plaintiffs would have been able to demand additional safety measures. The basis upon which they would have been able to make these demands was Article 22, ¶ 117 of the contract, which contained the procedure by which workers would grieve unsafe working conditions. Count 5 of plaintiffs' complaint against Bendix and Facet requires the interpretation of contract terms of a collective bargaining agreement and hence is pre-empted by § 301 pursuant to *Lueck*, and is removable to federal court pursuant to *Avco*. The plaintiffs' motion to remand as to the defendants Bendix and Facet is denied.[3]

The remaining twenty-nine defendants are the manufacturers and distributors of the toxic substances to which the plaintiffs

**3.** It should be noted that there is no "standing" problem in this case. While § 301 only refers to suits for violation of contracts between an employer and a labor organization, *Metropolitan Detroit, Etc., v. J.E. Hoetger & Co.*, 672 F.2d 580 (6th Cir.1982), individual members of a signatory union may bring § 301 actions, *Smith v. Evening News Ass'n.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), as well as individuals who have a personal or beneficial interest in the enforcement of the agreement, e.g. retired union members. *Hazen v. Western Union Telegraph Co.*, 518 F.2d 766 (6th Cir.1975); *Williams v. AMF, Inc.*, 512 F.Supp. 1048 (S.D.Ohio 1981); *Brown v. UAW*, 512 F.Supp. 1337 (E.D. Mich.1981), *aff'd.* 689 F.2d 69 (6th Cir.1981).

were allegedly exposed. As these claims are based solely upon state law, and there is not complete diversity between them and the plaintiffs, this court must determine whether it can and should exercise pendent jurisdiction over them. Pendent claim jurisdiction is a well established doctrine whereby a federal court exercises its discretion to hear a state claim where the court has subject matter jurisdiction over the case by virtue of an underlying federal claim, and where the state and federal claims derive from a common nucleus of operative fact. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[4] Pendent party jurisdiction is a variant of this doctrine, involving the discretionary assumption of jurisdiction over a party as to whom no independent basis of federal jurisdiction exists. *See generally*, Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction 2d § 3567.2. The Supreme Court has distinguished between pendent claim jurisdiction as authorized in *Gibbs* and pendent party jurisdiction:

> From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative." ... [T]he addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts

of limited jurisdiction marked out by Congress.

*Adlinger v. Howard*, 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). The command of the Supreme Court is clear that pendent party jurisdiction should be exercised with caution, with the trial court to remember that it is a federal court of limited jurisdiction.

 The analysis of whether pendent party jurisdiction exists in a given case involves three inquiries. *See, Ambromovage v. United Mine Workers of America*, 726 F.2d 972 (3d Cir.1984). The first is whether the court has the power under Article III of the Constitution to exercise jurisdiction over the pendent parties. The court has the constitutional power to hear pendent claims if the federal claim is substantial, the state and federal claims arise out of a common nucleus of operative facts, and the plaintiff would ordinarily be expected to try the claims together. *Gibbs*, 383 U.S. 725, 86 S.Ct. 1138. Second, the court "must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." *Aldinger*, 427 U.S. 18, 96 S.Ct. 2422. Third, even if this court has the constitutional and statutory power to exercise pendent party jurisdiction, it must inquire if this is an appropriate case in which to exercise such jurisdiction. In making this decision, the court must look to considerations of judicial economy, convenience, and fairness to the litigants, *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

The constitutional and statutory prongs do not pose significant problems in this case. The claims of the plaintiffs against all of the defendants arise out of the same operative set of facts: the alleged exposure to toxic substances at the workplace. Turning to the statutory power of this court to exercise jurisdiction over the pendent parties, most courts which have considered the issue have held that Congress

---

**4.** This Court has chosen to exercise pendent claim jurisdiction over whatever state law claims the plaintiffs have against Bendix and Facet which survive pre-emption by federal labor law.

neither explicitly nor implicitly prohibited pendent party jurisdiction in § 301 cases. *Vantine v. Elkhart Brass Mfg. Co., Inc.,* 762 F.2d 511 (7th Cir.1985); *Spielmann v. Anchor Motor Freight, Inc.,* 551 F.Supp. 817 (S.D.N.Y.1982); *contra, Pedro v. Teamsters Local 490,* 509 F.Supp. 83 (N.D. Cal.1981). Thus the outcome of this case turns upon whether it is appropriate for this court to exercise its jurisdictional power given the facts of this case.

The discretionary nature of pendent jurisdiction has been emphasized by the Supreme Court: "The power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of [a party's] right." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, *accord, Lee v. Western Reserve Psychiatric Habilitation Center,* 747 F.2d 1062 (6th Cir.1984). Among the factors the court must consider, besides judicial economy and fairness to the litigants, are whether the state issues substantially predominate over federal issues "in terms of proof, the scope of the issues raised or the comprehensiveness of the remedy sought." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, and whether the effect of combining the several claims and defenses of the parties would unduly complicate the case for the jury and the court. *Bradford v. General Telephone Co. of Michigan,* 618 F.Supp. 390 (W.D. Mich.1985); *St. Cyr v. Merrill, Lynch, Pierce, Fenner & Smith,* 540 F.Supp. 889 (S.D.Tex.1982); *Crabtree Investments v. Aztec Enterprises,* 483 F.Supp. 211 (M.D. La.1980). With these considerations in mind, the court rules that it is not appropriate to exercise pendent jurisdiction over the non-diverse parties in this case.

Issues of state law will certainly dominate this case if the pendent parties remain in the action. Claims arising under state law clearly form the bulk of this case. There are twenty-nine pendent parties compared to only two against whom federal claims are made. The allegations against the pendent parties outnumber those against the "federal parties" by almost three to one. It would be allowing the tail of pendent jurisdiction to be wagging the dog of limited federal jurisdiction if this court exercised jurisdiction over twenty-nine parties against whom there are seven counts on the coat-tails of two federal parties against whom three counts are outstanding.

Judicial economy and efficiency would also not be served by this court exercising its discretion to assume jurisdiction over the pendent parties. To try these cases together would require the application of both state and federal laws which are often contradictory or inconsistent. The affirmative defenses being asserted by many of the defendants give an early indication of the plethora of state law issues which will be injected into this case. These include contributory negligence, subsequent misuse and alteration of the products, acceptance of the product by the defendant employers, negligent training and maintenance, and assumption of risk. The multiple nuisance claims against Detroit Edison raise their own intricate issues of state law. The claims against the employers, Bendix and Facet, will be governed almost exclusively by federal labor law, which differs markedly from state tort law. For example, federal labor law employs its own statute of limitations and concepts such as the exhaustion of remedies, which find no counterpart in state law.[5] Whether or not the plaintiffs' collective bargaining unit properly represented the plaintiffs' interests may also become a factor.[6] Some of the tort claims which are viable against the

---

5. *See, e.g., DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1982); *Smith v. General Motors Corp.,* 747 F.2d 372 (6th Cir.1984).

6. It has been held that an allegation that the union breached its duty of fair representation is a necessary element of a § 301 claim against an

employer. *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291; *Clayton v. Automobile Workers,* 451 U.S. 679, 683 n.4, 101 S.Ct. 2088, 2092 n. 4, 68 L.Ed.2d 538 (1980). *But see Anno,* 14 ALR 4th 1161 for a discussion on the liability of unions for the failure to enforce safety rules on the job.

pendent parties, such as the intentional infliction of emotional distress, may be barred as to Bendix and Facet as pre-empted by federal labor law.[7] This mix of federal and state claims, with different standards and law being applied depending upon who the defendant is would certainly be confusing to the jury. In addition, the area of mass toxic tort litigation is a new and unsettled area of state law, and it is prudent to leave the development of this law to the state courts.[8]

Lastly, it is not as apparent as the pendent parties suggest in their briefs that the issues against them are the same as those against the employers. Much of the case against Bendix and Facet will involve interpretation of the collective bargaining agreement in order to ascertain what duty was owed to the plaintiffs by the employers. The central issue for the employers will be whether they fulfilled their contractual obligations to provide a safe workplace, rather than disputing what may have caused the plaintiffs' injuries. This is in contrast to the posture of the case against the pendent parties, which turns upon the issue of causation and which plaintiff was exposed to which product. Apart from causation, the pendent parties must litigate the various elements of a products liability case, such as negligent design, breach of warranty, and whether the products were "state of the art," all issues which are not critical to the employers' case. Essentially, the claims against the employers are contractual in nature, while those against the pendent parties sound in tort. Thus to remand the claims against the pendent parties will not result in a wasteful duplication of effort, as the issues to be determined are substantially different.[9]

 The final issue the court must address is whether the removal statute, 28

U.S.C. § 1441, provides a basis for jurisdiction that would otherwise be lacking. Section 1441(c) provides:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

This statute has been strictly interpreted by the Supreme Court.

> [W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).

*American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951). *See,* 14A Wright, Miller & Cooper, *Jurisdiction:* § 3724. There is no doubt that in this case the claims against all the defendants, both federal and state, are derived from "an interlocked series of transactions:" the exposure of the plaintiffs to allegedly toxic substances at the workplace. Thus the claims against the pendent parties fall into the "middle ground" whereby they are not related enough to the federal claims to justify the exercise of discretionary pendent party jurisdiction, yet too closely related to enable this court to consider them "separate and independent" under § 1441(c). *See, Charles C. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1 (1st Cir.1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312.

Accordingly, this court rules that it may properly exercise jurisdiction over defend-

---

**7.** *See, Allis-Chalmers v. Lueck,* —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

**8.** For example, Michigan law is conflicting as to the accrual date of toxic tort causes of action for the purpose of the running of the statute of limitations. *Wallisch v. Fosnaugh,* 126 Mich. App. 418, 336 N.W.2d 923 (1983) [statute begins

running on the date of injury in negligence actions]; *Bonney v. The Upjohn Co.,* 129 Mich. App. 18, 342 N.W.2d 551 (1983); *Yustick v. Eli Lilly and Co.,* 573 F.Supp. 1558 (E.D.Mich.1983) [applying "date of discovery" rule].

**9.** This mix of contract and tort issues would also be confusing to the jury.

ants Bendix and Facet, and that the claims against the remaining defendants be remanded to state court.

IT IS SO ORDERED.