**L. M. BROWN, Plaintiff,**

**v.**

**Milton W. IVIE, Jr., Graham H. Lightsey, Jr., and United Power Distributors, Inc., Defendants.**

Civ. A. No. 79–2211.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 30, 1980.

Robert W. Patrick, Nickolas P. Chilivis, Thomas S. Richey and William G. Leonard, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for plaintiff.

C. David Vaughan, Atlanta, Ga., John H. Moore, Downey, Cleveland & Moore, Marietta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

The facts underlying this complaint involve the ouster of a minority shareholder from a close corporation, United Power Distributors, Inc. The ousted shareholder, Brown, has brought his complaint under the anti-fraud provisions of the federal securities acts. He alleges jurisdiction under Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa) and Section 22(a) of the Securities Act of 1933 (15 U.S.C. § 77v(a)). The complaint contains four counts which purport to assert violations of the federal securities laws by the defendants who are the remaining shareholders in the corporation. Further counts set out claims under Georgia securities laws and common law fraud and equity concepts. In

answering, defendants have counterclaimed for damages and equitable relief. Before the court today is Defendants' Motion for Judgment on the Pleadings, and Plaintiff's Motion to Dismiss Counts 3 Through 6 of Defendants' Counterclaim.

The court will consider first the motion for judgment on the pleadings. In the complaint, Brown has averred that he and defendants Ivie and Lightsey were sole shareholders of United Power Distributors, Inc., each owning one-third of the outstanding shares. At all relevant times, Ivie was a director and president; Lightsey was a director and treasurer, as well as a salesman employed by the corporation; and plaintiff Brown was a director and secretary and was employed as a salesman by the corporation until he was removed from those positions by the defendants in March and April of 1979.

Brown claims that in 1976, he, Ivie, and Lightsey signed a Buy-Sell Agreement providing for the repurchase of stock by the corporation at book value if a shareholder left the corporation or died. In a puzzling assertion, Brown states that "this agreement was never consummated." Continuing, Brown claims that prior to February 26, 1979, defendants Ivie and Lightsey chose to join forces to oust him as director, officer and employee of the company. In pursuit of that scheme, they secured his signature to a Stock Purchase Agreement, stating that the purpose of the agreement was to allow a change in insurance companies and a change in the amount of insurance purchased on the lives of the three shareholders. Brown avers that he was not told that Ivie and Lightsey had decided to remove him and that their purpose in securing his signature to the Stock Purchase Agreement was to acquire his shares for less than their fair value—namely, at book value. Brown avers that he signed the Stock Purchase Agreement in reliance on those material and false representations. As required by the Stock Purchase Agreement, Brown turned over physical possession of his shares to John H. Moore, a trustee, for a restrictive endorsement to be entered upon the certificates. A week la-

ter, Ivie and Lightsey terminated Brown's employment and shortly thereafter removed him as secretary and director.

Brown brought this suit against Ivie and Lightsey, also naming the corporation as a defendant under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)), and Section 15 of the Securities Act (15 U.S.C. § 77*o*.) Brown's basic claim is that the foregoing actions violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder. Section 10(b) reads in pertinent part as follows: "It shall be unlawful for any person . . . by the use of any means or instrumentality of interstate commerce . . . (b) To use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . for the protection of investors."

After consideration, the court concludes that any misrepresentation or omission which might have occurred here was too remote from a securities transaction to have violated the federal acts.

A case closely in point is *Ketchum v. Green*, 557 F.2d 1022 (3rd Cir. 1977) cert. den. 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300. *Ketchum v. Green* also involved the ouster of two directors of a close corporation who owned between them roughly 45% of its shares. The defendants were other directors and officers of the corporation, of whom 5 held together approximately 48% of the outstanding stock. Plaintiffs alleged that there was a usual practice among the directors of following the suggestions of the nominating committee for the slate of candidates for the board and officerships. Relying on the usual practice, Ketchum and Bigler, who actually possessed the controlling block of stock as they had their own holdings together with proxies obtained from others, joined the defendants and unanimously elected the incumbent directors assuming that the defendants would honor the usual practice with respect to

officerships. Plaintiffs averred that the defendants concealed their real plans which involved agreement among themselves to dislodge the plaintiffs as officers. Immediately following the shareholders meeting, the board convened to elect officers, at which point the defendants made known for the first time their intention to expel the plaintiffs as officers. Defendants rejected the nominations of the plaintiffs, and elected their own nominees, thereby removing plaintiffs as officers. Following their ouster, the plaintiffs were required by the provisions of a stock retirement plan to sell their shares to the corporation. The lawsuit was brought at that point under Section 10(b) and Rule 10b–5 seeking to enjoin their ouster as officers and shareholders and to recover damages.

The Third Circuit, considering that complaint, found that it was subject to dismissal for failure to state a claim. The court found that any misrepresentation was not "in connection with" a sale or purchase of a security: "It thus is evident that the alleged misrepresentations on the part of the defendants were undertaken with the objective of inducing the expulsion of the plaintiffs as officers and employees—not to foster the surrender of their stock. While it may be that surrender of the shares will constitute a *consequence* of the defendants' overall scheme, we believe that such a consequence, at best, will be an indirect one. Accordingly, it would appear that the deceptive practices in which the defendants are alleged to have engaged and the ultimate sale of plaintiffs' stock are not tied sufficiently tightly so as to surmount the 'connection' requirement of § 10(b) even as broadly formulated in *Bankers Life* [404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128]" 557 F.2d at 1028.

This court finds that *Ketchum v. Green* and similar cases, *e. g., St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 562 F.2d 1040 (8th Cir. 1977), support the proposition that plaintiff's complaint does not aver a sufficiently close connection between a misrepresentation and any stock transaction. The element of causation is missing. Plaintiff does not al-lege that he was prevented from reading or understanding the Stock Purchase Agreement and the obligations it placed upon him, nor that any deception was present within that Agreement. Any alleged misrepresentation by the other directors as to why they wanted him to sign the Agreement, is too remote to be "in connection with" a securities transaction, and could not have been a *cause* of any loss by plaintiff.

Moreover, the court finds that under the rationale of *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the corporate struggle involved in the instant lawsuit was not intended to be covered by the securities laws. In *Santa Fe Industries*, the United States Supreme Court refused to extend Section 10(b) and Rule 10b–5 to cover an alleged breach of fiduciary duty by a majority of stockholders in connection with a Delaware corporate merger. There, the Court wrote that "Absent a clear indication of congressional intent, we are reluctant to federalize the substantial portion of the law of corporations that deals with transactions in securities, particularly where established state policies of corporate regulation would be overridden. As the Court stated in *Cort v. Ash*, [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26] supra: 'Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law *expressly* requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation.' [Citation omitted]. We thus adhere to the position that 'Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.'" 430 U.S. at 479, 97 S.Ct. at 1304.

It follows that Counts 1 through 4 of plaintiff's complaint fail to state a claim under the federal securities laws. The remaining counts of the complaint, dependent as they are upon concepts of pendent jurisdiction, must also be dismissed. Finally, the counterclaim of defendants, which is grounded in ancillary jurisdiction, will not

be entertained because the court has no jurisdiction over the primary controversy. This result is not contested by defendants. Accordingly, though this issue has largely been mooted, plaintiff's motion to dismiss counts 3 through 6 of defendants' counterclaim will be granted.

It is hereby ORDERED that Defendants' Motion for Judgment on the Pleadings is GRANTED; Plaintiff's Motion to Dismiss Counts Three Through Six of Defendants' Counterclaim is GRANTED; and the complaint and the remaining counts of the counterclaim are DISMISSED for failure to state claims within federal jurisdiction.

So ORDERED.