**Jacob FISHMAN, Plaintiff,**

v.

**Melvin J. ESTRIN et al., Defendants.**

**Civ. A. No. 80–1501.**

United States District Court, District of Columbia.

Nov. 4, 1980.

Barnet D. Skolnik, Baltimore, Md. and Richard A. Hibey, Robert B. Wallace of Surrey & Morse, Peri N. Nash, Washington, D. C., for plaintiff.

Gerald M. Stern, Vicki C. Jackson of Rogovin, Stern & Huge, Washington, D. C., for defendants.

## ORDER

CHARLES R. RICHEY, District Judge.

This case is before the Court on the motion of defendants Estrin, Abod, Steinberg, Sloan, Frankel and Human Service Group, Inc. ("HSG") to dismiss the complaint. The plaintiff charges the named defendants with violation of Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.-

10b–5), as well as fraud, breach of fiduciary duty and breach of contract.[1] These defendants seek to dismiss this action on four grounds: one, that any claim under the federal securities laws is time–barred by the two–year statute of limitations; two, that plaintiff has failed to properly allege fraud under the federal securities laws; three, that no federal claim is asserted against defendant Sloan, and he must therefore be dismissed individually; and four, the complaint fails to allege a claim against the corporation, HSG. Upon careful consideration of defendants' motion and plaintiff's opposition thereto, the Court hereby denies said motion *in toto*. The Court will discuss the rationale with respect to each of the four grounds *seriatim* below.

## BACKGROUND

Prior to December 16, 1977, the plaintiff, Dr. Fishman, was president and a member of the Board of Directors of American Health Services, Inc. (AHS) and HSG.[2] On December 16, 1977, the plaintiff and defendants Estrin, Abod, Frankel and Steinberg entered into a stock purchase agreement wherein the defendants agreed to buy and the plaintiff agreed to sell all of his shares of common stock of HSG for a mutually acceptable price.[3] Additionally, on the same date, defendants Estrin, Abod, Frankel and Steinberg, as well as defendant Sloan, entered into the Dominion–Barcroft Agreement, whereby the defendants agreed

to use their "best–efforts" in trying to persuade the remaining "independent" directors of AHS to sell AHS of Virginia, Inc.,[4] a wholly–owned subsidiary of AHS, to the plaintiff. On September 7, 1978, the "independent" directors of AHS rejected the plaintiff's offer; from which plaintiff has brought suit.

## COUNT I IS NOT BARRED BY THE STATUTE OF LIMITATIONS

■ The Court notes that the parties are in agreement as to the applicable limitation period for the federal cause of action. Pursuant to *Forrestal Village, Inc. v. Graham*, 551 F.2d 411, 413 (D.C.Cir.1977), actions brought under Rule 10b–5 in the United States District Court for the District of Columbia are to be governed by the District of Columbia's blue sky law. Accordingly, the two–year limitation period established by § 2–2413 of the District of Columbia Code governs. *Accord, Wachovia Bank and Trust Co. v. National Student Marketing Corp.*, 461 F.Supp. 999, 1007–08 (D.D.C. 1978); *Houlihan v. Anderson–Stokes, Inc.*, 434 F.Supp. 1324, 1326 (D.D.C.1977).

■ Upon determination of the applicable statute of limitations, the only issue in dispute is the date the limitation period began to run.[5] The defendants claim that the period commenced either in December of 1977, or at the latest, March of 1978.[6]

---

1. Defendant HSG is only a party to the alleged violation of the federal security laws.

2. Prior to December 16, 1977, Dr. Fishman owned 32.1% of the outstanding common stock in HSG and 2.85% of the outstanding common stock of AHS. (Plaintiff's Affidavit (Pl. Aff.) at 5.)

3. Defendants Estrin, Abod, Frankel and Steinberg, and Sloan owned approximately 66.9% of the outstanding common stock in HSG. HSG in turn owned approximately 55.25% of the outstanding common stock in AHS. After the closing on the stock purchase agreement, the five individual defendants owned approximately 99% of the outstanding common stock in HSG, with HSG owning approximately 60% of the outstanding common stock of AHS. (Pl. Aff. at 6.)

4. Dominion–Barcroft is the trade name of AHS of Virginia, Inc.

5. In a situation involving alleged fraud in which the relief sought is based on the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder, the state law of the forum will determine the applicable statute of limitations, while federal law will determine when the applicable statute begins to run. Securities Exchange Act of 1934, §§ 1 *et seq.*, 10(b), 15 U.S.C. §§ 78a *et seq.*, 78j(b). *See Maine v. Leonard*, 365 F.Supp. 1277, 1280 (W.D.Va. 1973).

6. The stock purchase agreement was executed by the plaintiff, Dr. Fishman, and defendants Estrin, Abod, Frankel and Steinberg in December of 1977. In March of 1978 the sale of the securities was consummated.

(Defendants' Memorandum (Def. Memo) at 5.) The plaintiff claims that the period began on September 7, 1978; the date of the Board's rejection of plaintiff's purchase offer.[7] For the following reasons, the Court finds that the limitation period commenced on September 7, 1978 and, therefore, is not time barred.

The Court takes note of defendants' reliance on *Pittsburgh Coke and Chemical Co. v. Bollo*, 421 F.Supp. 908, 923 (E.D.N.Y.1976), aff'd, 560 F.2d 1089 (2d Cir. 1977), that "[f]or purposes of a Rule 10b–5 claim, events occurring after the commitment to purchase stock has been made are irrelevant." However, the federal tolling doctrine is applicable to cases involving antifraud provisions like Rule 10b–5. *Vanderboom v. Sexton*, 422 F.2d 1233, 1240 (8th Cir. 1969), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). As this Court noted in its decision in *Houlihan v. Anderson–Stokes, Inc.*, 434 F.Supp. 1319, 1322 (D.D.C.1977), the statute of limitations cannot begin to run until the alleged fraud is or should have been discovered.[8]

The defendants claim that there were many instances in which the plaintiff should have known of the alleged fraud. (Def. Reply Memo at 3–5.) While the Court agrees that the plaintiff should have become suspicious, the Court finds that, in this situation, mere *suspicion* alone would not have been grounds for suit.[9] If suit had been brought at that time, the defendants could merely have claimed that the "independent" board of AHS had not yet acted;

thus the case would not have been ripe. The Court finds that such director action is the distinguishing element between this case and those cited by the defendants.[10] As pointed out in *Maine v. Leonard*, 365 F.Supp. 1277 (W.D.Va.1973), the duty of reasonable diligence is determined by the circumstances of each case. The Court finds that in this case the plaintiff did not sit back and leisurely undertake discovery of the full details of the alleged fraud. *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970). Instead, the plaintiff merely waited a short period of time for board action.[11]

To permit otherwise, would allow parties to abuse the various statutes of limitations; a defendant need only enter into a contract with part performance due past the applicable limitation period. While such a contract would often times be completed, a plaintiff would be required to bring suit within the applicable limitation period to ensure that he had access to the courts. Accordingly, the Court finds that despite rumors to the contrary, a reasonable person has every right to believe that persons of "high integrity" will carry out their contracts.

## THE COMPLAINT STATES A CLAIM OF FRAUD AND MISREPRESENTATION "IN CONNECTION WITH" THE SALE OF SECURITIES IN VIOLATION OF SECTION 10(b) AND RULE 10b–5

For the following reasons, the Court finds that the complaint does in fact state a claim

7. The "independent" board of Directors of AHS voted to reject Dr. Fishman's proposal.

8. A plaintiff "knows" of a fraud when he has actual knowledge (1) that the statements made were false, that material facts were omitted, or that other acts constituting a violation of Rule 10b–5 occurred, and (2) that the defendants acted with the requisite degree of scienter. *Batchelor v. Legg & Co.*, 55 F.R.D. 557, 563 (D.Md.1972).

9. The plaintiff admits, in both his complaint and memorandum, that he was suspicious prior to September 7, 1978.

10. A review of the cases cited by the defendants shows that in each case the alleged fraud was perpetual in nature; whereas, the present

case had a cut-off date (independent director action). *See Cook v. Avien, Inc.*, 573 F.2d 685 (1st Cir. 1978); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402 (2d Cir. 1975); *Klein v. Bower*, 421 F.2d 338 (2d Cir. 1970) (suit filed nearly ten years after the transaction in question occurred); *Wachovia Bank & Trust Co., Inc. v. National Student Marketing Co.*, 461 F.Supp. 999 (D.D.C.1978); *Tobacco and Allied Stocks v. Transamerica Corp.*, 143 F.Supp. 323 (D.Del.1956), aff'd, 244 F.2d 902 (3rd Cir. 1957).

11. A period of only nine months elapsed between the execution of the stock purchase agreement and the rejection by the "independent" directors of AHS.

of fraud and/or misrepresentation in connection with the sale of securities in violation of section 10(b) and Rule 10b–5. The defendants state that the gravamen of their motion to dismiss count I for failure to state a claim is that the alleged fraud, of which plaintiff is complaining here, was not in connection with the sale of securities. Additionally, the defendants claim that no federal cause of action is stated and the entire complaint should therefore be dismissed.

■ With respect to defendants' first contention, the Court finds that the alleged fraud was in connection with the contract for the sale of stock. The plaintiff has alleged that prior to the signing of the agreements, the parties had been involved in protracted negotiations with each side being represented by counsel. Plaintiff had wanted one agreement by which he would agree to sell his stock in HGS to defendants at an agreed upon price, and the defendants would use their best efforts to persuade the "independent" directors of AHS to sell Dominion–Barcroft to him. However, defendants contended that the execution of legally *separate* contracts was the only appropriate way to proceed. (Def. Memo at 12.) Plaintiff recanted from this demand upon the belief that the defendants would still carry out their original agreement.

The Court finds that the defendants attempted to obfuscate what seems to be a reasonable agreement between the parties by stating that there was no connection between the two agreements. Yet the defendants admit in a footnote that the stock purchase agreement acknowledges that other contracts are being signed on the same date. (Def. Memo at 11.) Indeed, paragraph 14 of the stock purchase agreement states:

The parties acknowledge that other agreements between the parties bearing even date herewith shall be executed resulting in a full and final settlement of all disputes between Seller and Purchasers. The parties hereto covenant and agree that should for any reason the conditions precedent contained in the con-

tract relating to the purchase of assets or of stock of AHS of Virginia, Inc. not be fulfilled or that the transactions contemplated therein not be consummated relating to the purchase of HAS [sic] of Virginia, assets or stock other than for reasons of breach by the party hereto seeking to enforce this provision, this Agreement shall nonetheless remain in full force and effect and be enforceable in accordance with its terms.

Based on the foregoing, the Court does find that there was a connection between the two agreements. Additionally, the Court is perplexed as to what more the plaintiff could have done to ensure that the Dominion–Barcroft agreement was tied to the stock purchase agreement, especially where, as defendants submit, the execution of two legally separate documents was the best way to proceed.

■ Secondly, the Court finds that the plaintiff has alleged a federal cause of action. The defendants claim that any fraud of which plaintiff complains occurred, if at all, well after the date of the stock purchase agreement (Def. Memo at 13). The defendants cite *Ohashi v. Verit Industries,* 536 F.2d 849 (9th Cir. 1976) for the proposition that if a contract for the sale of securities has been fully executed, fraud following the performance of the contract cannot be in connection with the purchase or sale of securities. Moreover, they maintain that the relevant time for measuring the fraud of which plaintiff complains is the date upon which the parties entered into the obligation to purchase and sell stock; *i.e.* December 16, 1977. *Pittsburg Coke & Chemical Co. v. Bollo,* 421 F.Supp. 908 (E.D. N.Y.1976).

The Court does not agree. In *Ohashi,* 536 F.2d at 852, the plaintiff was a seller of stock, but the complaint failed to make any showing that connected any of the alleged fraudulent activities to the sales. The deceptive conduct occurred between June 1, 1971, when the restrictions were supposed to be removed and January 12, 1972, when the restrictions were removed. His sales did not begin until August 1, 1972, and *he*

*did not claim that he sold his shares for less than their market value at the time of the sales.* However, in the present case, the plaintiff has alleged that he was induced to sell his stock in AHS and HSG well below market value and on terms substantially unfavorable to him. (Pl. Complaint ¶ 49(c)–(e)).

In *Pittsburg Coke*, 421 F.Supp. at 923, the court found that Rule 10b–5 liability could attach only if the defendant knew that the material facts incorporated in his representations were untrue or misleadingly incomplete at the time they were relied upon by the plaintiff. Such issues of non–disclosure, misrepresentation, materiality and reliance are to be determined by the situation and knowledge of the parties at the time they commit themselves, and not on the basis of subsequent events, even though they occur prior to the formal closing date. *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 890 (2d Cir. 1972). In the present case, the misrepresentations occurred on the date of the contract. The plaintiff has alleged that the defendants failed to use their "best efforts" in procuring the approval of the independent directors of AHS.

Further, the defendants claim that it is simply not reasonable that plaintiff, as a sophisticated investor represented by counsel, could have attached importance to the alleged verbal representations that he would be able to have the facility. Since he had a contract, the plaintiff did not rely on oral representations. The Court finds that he acted reasonably because he had a right to believe that the defendants would carry out their end of the agreement.[12] As the defendants admit, the representation in question was a promise by one of the parties and it must be viewed in light of the relationship of the parties, the context in which the statement was made, the experience and bargaining position of the investor and the nature of the transaction. *Robinson v. Cupples Container*, 513 F.2d 1274, 1277 (9th Cir. 1975). The Court finds that

the plaintiff's decision was based on knowledge that the independent directors had consistently voted as the other directors wanted. (Pl. Aff. at 16–20.) Additionally, the bargaining position of the plaintiff was very weak; as a minority shareholder, he was being forced out. The Court also notes that this transaction, especially in light of the Federal Securities Law governing publicly held corporations, was not unreasonable.

■ The defendants further claim that Count I must also fail because it does not plead the necessary element of causality in connection with the alleged damage. It is plainly required that a complaint for violation of Rule 10b–5 plead that the alleged fraud caused, in fact, the damage and injury of which plaintiff complains. *Kidwell ex rel. Penfold v. Meikle*, 597 F.2d 1273, 1294 (9th Cir. 1979); *Fryling v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 593 F.2d 736, 743–44 (6th Cir. 1979); *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040, 1048 (8th Cir. 1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978).

■ The Court finds that the plaintiff's complaint (¶¶ 18–22, 24–28, 30–35, 49) does allege that the defendants' deceptive activity caused the loss suffered by the plaintiff, as well as the transaction in which the loss was incurred since the activity induced the sale of the stock well below market value. Additionally, causation is generally considered to be a fact question to be tried on the merits and cannot be decided on motion for summary judgment or similar motion. *Grenader v. Spitz*, 390 F.Supp. 1112 (S.D.N.Y.1975); *Voege v. Ackerman*, 364 F.Supp. 72, 74 (S.D.N.Y.1973).

Finally, the Court notes that the defendants attempt one final effort to have this complaint dismissed for failure to state a claim by citing the recent case of *Brown v. Ivie*, 490 F.Supp. 409 (N.D.Ga.1980). The defendants claim that the court granted a motion for judgment on the pleadings in a

---

**12.** Where the defendants did not perform their part of the agreement, the plaintiff has properly

*sought redress through the courts.*

case strikingly similar to the instant one. In *Brown*, the plaintiff failed to allege any fraud or misrepresentation in the stock purchase agreement itself. Instead, the plaintiff was misled as to the purpose of the sale; he was not deceived as to the value he was to receive for his shares.

## DEFENDANTS SLOAN AND HSG HAVE BEEN PROPERLY ALLEGED TO BE LIABLE EITHER AS "CONTROLLING PERSONS," AIDERS AND ABETTORS OR AS PENDENT PARTIES AND ARE NOT ENTITLED TO BE DISMISSED AS DEFENDANTS

Defendant Sloan first contends that a federal claim cannot be asserted against him since the two agreements, as a matter of law, are entirely separate and, as such, cannot give rise to a federal securities claim. (Def. Memo at 18.) However, the Court's decision that the two agreements are in fact a product of each other makes such a contention moot.

The second contention of defendant Sloan is that, even if the two agreements are considered as one, he cannot be held liable for any fraud in connection with an agreement to which he is not a party; hence, the Court cannot exercise jurisdiction over him. The defendant relies on this Court's opinion in *Houlihan v. Anderson–Stokes, Inc.*, 434 F.Supp. 1324 (D.D.C.1977), which declined to exercise pendent jurisdiction over local law claims charging accountants with violation of state securities' statutes and reckless or negligent misrepresentation. However, the Court notes that the facts of this case are different. In *Houlihan*, this Court declined to exercise its pendent jurisdiction over the state law claims against the defendant accountants because it had already dismissed the federal claims against them. *Id.* at 1329. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

▪ The Court therefore finds that it is within its discretion in determining whether or not to exercise pendent jurisdiction. *Crabtree Investments, Inc. v. Aztec Enterprises, Inc.*, 483 F.Supp. 211 (M.D.La.

1980). The factors to be considered include, *inter alia*, judicial fairness to the litigants, convenience of the parties and witnesses, whether the federal courts have exclusive jurisdiction over the federal claim, whether the federal court will be asked to resolve difficult questions of state law, and whether joining the claims would unduly complicate matters for the court and the jury. *Id.* at 217. Additionally, the Court finds that the federal and non–federal claims of the plaintiff do in fact arise from a "common nucleus of operative facts." *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Based on the foregoing, the Court finds that it must exercise its pendent jurisdiction and therefore join the defendant Sloan as a party to this action.

Finally, the defendant HSG claims that it should not be a party to this action since it was not involved in the stock purchase agreement entered into between the other individual defendants and plaintiff. (Def. Reply Memo at 25.) Defendant HSG states that the implicit suggestion that, because the individual defendants were allegedly a majority of the board of HSG, their joint acts are thus the acts of HSG is, for the reasons set forth in AHS's memo, a mere conclusion of law. (Def. Memo at 19.) The Court does not agree; instead, the Court finds that this is a question of fact that must be left to the jury. This is especially so where, as the plaintiff points out, the individual defendants owned approximately 66.9% of the stock of HSG prior to the closing on the stock purchase agreement, and 99% of the stock thereafter. (Pl. Aff. at 5–6.)

Accordingly, it is, by the Court, this 4th day of November, 1980,

ORDERED, that defendants' motion to dismiss plaintiff's complaint be, and the same hereby is denied; and it is

FURTHER ORDERED, that the defendants shall file an answer to the complaint within ten (10) days from the date hereof, pursuant to rule 12(a) of the Federal Rules of Civil Procedure; and it is

FURTHER ORDERED, that the parties shall appear before this Court for a status call as set forth by future order of this Court.