**ACME PROPANE, INC., an Illinois corporation, Frank S. Kasper and Jerome J. Kasper, Plaintiffs,**

v.

**TENEXCO, INC., an Illinois corporation, Richard S. Incandela, Energy Funding Company, Inc., an Illinois corporation, Ronald S. Nietupski, G.A.P. Enterprises, an Indiana general partnership and Lenard Pearson, Defendants.**

No. 86 C 9119.

United States District Court, N.D. Illinois, E.D.

Aug. 18, 1987.

**144**

Steven D. Rakich, Robert D. Kreisman, Lee M. Weisz, Kreisman and Rakich, Chicago, Ill., for plaintiffs.

Alan S. Rutkoff, Josh M. Leavitt, McDermott Will & Emery, Chicago, Ill., William J. Gibbons, Deborah C. Paskin, Latham & Watkins, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Frank S. Kasper, Jerome J. Kasper and Acme Propane, Inc. (referred to collectively as "Acme") filed this action seeking damages for alleged securities fraud. Defendants Tenexco, Inc., Richard S. Incandela, Energy Funding Company, Inc. ("Energy") and Ronald S. Nietupski filed a motion to dismiss Acme's amended complaint under Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b). Defendants G.A.P. Enterprises ("GAP") and Lenard Pearson also moved to dismiss and adopted the other defendants' filings. For the following reasons, we agree that the complaint should be dismissed.

### I. FACTUAL ALLEGATIONS [1]

The amended complaint alleges four counts of securities fraud relating to the defendants' sale of working interests in oil and gas wells to Acme. Count I alleges violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982),[2] and Rule 10b–5, 17 C.F.R. § 240.-10b–5 (1986).[3] Count III alleges violations of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2) (1982).[4] Counts II and IV are pendent state claims which allege common law fraud and violations of § 12 of the Illinois Securities Act of 1953, Ill.Rev.Stat. ch. 121½, ¶ 137.12A, F, G, I (1986), respectively.

Acme alleges that it bought fractional working interests in the Thieman-Pearson No. 1–12 ("T-P No. 1–12") and Pearson-

---

1. For the purpose of this motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court assumes the truth of all well-pleaded factual allegations in Acme's complaint and draws all reasonable inferences from those allegations. *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984).

2. Section 78j(b) provides that it shall be unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

3. Rule 10b–5 provides that, "[i]t shall be unlawful for any person directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

4. Section 77l(2) provides for civil liabilities that arise in connection with prospectuses and communications. Specifically, it confers liability on anyone who sells or offers to sell securities "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading...." This statute provides for rescission of the sale or damages if the securities in question are no longer owned by the plaintiff.

Thieman No. 1–12A ("P–T No. 1–12A") wells from Tenexco on or about March 31, 1985. The interests were obtained through an assignment from GAP and Pearson on April 5, 1985. Amended Complaint ("AC") at ¶ 18. Defendants Incandela, through Tenexco, and Nietupski, through Energy, acted as agents for defendants Pearson and GAP for the sale of the latter's interests in the above-named wells. *Id.* at ¶ 17. Acme further alleges that the sale of the wells was accomplished through the use of the mails and instrumentalities of interstate commerce, specifically, telephone lines connected to an interstate system. *Id.* at ¶ 19.

The allegations of fraud are based upon misrepresentations and omissions by defendants Nietupski and Incandela on behalf of all the defendants. On or about March 11, 1985, Nietupski stated that the production history of the two wells was identical and that they should produce oil for thirty years. AC at ¶ 21. During two telephone conversations with Frank Kasper between March 11, 1985 and March 23, 1985, Nietupski reiterated his earlier statement that the wells had identical production histories and would have similarly productive lives. *Id.* at ¶ 22. In a meeting subsequent to March 11, 1985, but prior to March 23, 1985, Nietupski repeated the representations he had made earlier. *Id.* at ¶ 23.

During a meeting on March 23, 1985, Incandela gave Frank and Jerome Kasper a document dated March 20, 1985, that was titled "Reserve Estimate for the Pearson-Thieman No. 1–12." AC at ¶ 24. This document stated that "[a]rmed with this knowledge and the history of similar prolific wells in the area we can only assume that this well will perform equally as good if not better." *Id.* Incandela and Nietup-

ski allegedly stated during the above-mentioned meeting that the potential of the two wells was equally good. *Id.* at ¶ 24. All plaintiffs executed a letter of intent to purchase working interests in the wells. *Id.* at ¶ ¶ 24, 26.

Acme contends that the representations by Incandela and Nietupski are false and fraudulent. AC at ¶ 28. They contend that the production histories of the two wells were not identical because the GOR[5] values were very different. The document given to the plaintiffs at the March 23, 1985 meeting, AC, Exhs. B, C, provides the production histories of both wells from January 1982 for the T–P No. 1–12 well and from November 1983 for the P–T No. 1–12A well, through November 1984. From these figures a GOR value can be easily calculated. Acme contends that the defendants did not explain the significance of the GOR, nor did any defendant provide the plaintiffs with such data. AC at ¶ 28.

Another of Acme's claims is that, contrary to the March 11, 1985 representations of Nietupski and Incandela, the choke hole of the P–T No. 1–12A well had been steadily increasing in size through February and March 1985. AC at ¶ 29. Acme complains also that it was never told that the State of Michigan limited the production of natural gas per well. *Id.* at ¶ 30. On February 11, 1985, Acme notified Incandela and Nietupski of its intent to rescind the purchase of working interests in the aforementioned oil wells. AC, Exhs. G, H.

## II. MOTION TO DISMISS

The defendants have moved to dismiss Acme's amended complaint because it fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).[6]

---

5. GOR is the gas/oil ratio. It is determined by dividing the volume of gas produced by the volume of oil produced. Acme claims, and the defendants do not dispute, that the GOR is a useful indicator of a well's potential productivity and an important factor in making an investment decision. The significance of a climbing GOR is that an overall increase in gas relative to oil may indicate decreasing well pressure and,

consequently, lower long-term oil production from the well.

6. Defendants also contend that the amended complaint fails to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). Because the complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(6), we need not reach defendants' alternative ground.

## A. Count I—The 10b–5 Claim [7]

There are three essential elements to a 10b–5 claim: (1) a material misrepresentation, omission, deception or manipulation, *Sante Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); (2) scienter—an intent to deceive, manipulate or defraud, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); and (3) some causal connection between the alleged violation and the injury to the plaintiff, *Fishman v. Estrin,* 501 F.Supp. 208, 213 (D.D.C.1980). A fundamental part of both the materiality and causation elements under 10b–5 is the existence of the plaintiff's justifiable reliance on the alleged misrepresentations. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 530 (7th Cir.1985). The Seventh Circuit subscribes to the view that "the securities laws create liability only when there is a 'substantial likelihood' that the misrepresentation 'significantly altered the "total mix" of information' that the investor possesses." *Id., citing TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

The "total mix" view is particularly relevant in the present case. There are a series of alleged misrepresentations and omissions regarding the production expectations for the two wells in question. Acme argues that even if the production expectations are characterized as "predictions," they constitute material misrepresentations. Nonetheless, the primary misrepresentation on which Acme premises its claim is the purportedly identical historical production levels of the two wells. AC at ¶¶ 21–24, 28. Documents attached to Acme's complaint, however, reveal that the raw data reflecting the actual production histories was given to Acme prior to the transaction. *See* AC, Exhs. B, C. To the extent that Acme contends it was prejudiced by the misrepresented GOR values, its argument is not persuasive because the raw data disclosed in these documents provided the basis for Acme to calculate those values. Even if the defendants made the oral misrepresentations charged in the complaint, no 10b–5 liability ensues where the buyer possesses written information which discloses the truth. *Teamsters,* 762 F.2d at 530. "When the issuer discloses the truth, an oral variance is not the legal cause of the injury." *Id.* Furthermore, "[i]f the investor already possesses information sufficient to call the representation into question, he cannot claim later that he relied on or was deceived by the lie." *Id.* Certainly where the alleged misrepresentations patently conflict with factual data submitted by the seller to the purchaser, the latter possesses sufficient information to question the inconsistency. That is the case with the transaction in this case. Accordingly, we find that the alleged misleading statements by the defendants were not material misrepresentations on which a reasonable investor could rely.

Acme also contends that two other statements or omissions contributed to its decision to invest, and that those statements represent material misrepresentations within the meaning of 10b–5. First, Acme alleges that the defendants falsely stated that the size of the "choke hole" of P–T 1–12A "had remained constant throughout its production history," AC at ¶ 21, when, in fact, it had been steadily enlarged through February and March 1985, AC at ¶ 29. The relevance of this information, according to the complaint, is that an increase in the size of the choke hole indicates a gas pressure build-up which in turn signifies that oil production cannot be sustained at the present levels. *Id.* Once again, however, Acme overlooked a written statement contained in the "written reserve estimate" for the P–T No. 1–12A well issued in March 1985, several days before Acme's purchase of the working interests. AC, Exh. D. That document stated that with respect to P–T No. 1–12A, "no appreciable decline in pressure has been observed that cannot be attributable to changes in the choke setting orifice." *Id.*

7. For simplicity, the claims based on § 10(b) of the 1934 Act, 15 U.S.C. 78j(b) and Rule 10b–5, 17 C.F.R. 240.10b–5, will be termed 10b–5 claims.

Like the disclosures of production histories, the written reserve estimate contradicts the alleged misrepresentations concerning the choke hole size. Under the "total mix" view of the informational package given to Acme, there was not justifiable reliance on the choke hole oral statements which would provide a legitimate basis for Acme's 10b–5 claim. *See Teamsters*, 762 F.2d at 530.

The final misrepresentation alleged is the defendants' failure to disclose the existence of Michigan regulations [8] limiting natural gas production to 450,000 cubic feet per day. There is an internal inconsistency in Acme's supporting argument regarding the harm arising from this alleged omission. In large part, Acme's complaint argues that its expectations of *oil* production were fraudulently inflated. Acme admits that the Michigan *gas* regulations are designed "to assure the recovery of as much oil as possible from the field." Acme's Response to Defendants' Motion to Dismiss Amended Complaint at 6–7. Acme's complaint obliquely refers to its ignorance of the gas regulations as relevant to its investment decision without arguing how this purported omission, even if material, is a causation of any damage it incurred. Accordingly, we cannot construe the omission concerning the regulation as a material omission which caused Acme to be injured. In conclusion, we hold that Acme's complaint fails to state a 10b–5 claim, and we dismiss Count I pursuant to Fed.R.Civ.P. 12(b)(6).

### B. Count III–The § 12(2) Claim

To make out a claim under § 12(2), 15 U.S.C. 77*l* (2), it must be shown that (1) the defendants offered or sold a security; (2) by the use of any means of communication in interstate commerce; (3) through a prospectus or oral communication; (4) by making a false or misleading statement or by omitting to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading; (5) plaintiff did not know of the untruth or omission; and (6) defendants knew, or in the exercise of reasonable care, could have known the untruth or omission. *See Monetary Management*

*Group v. Kidder, Peabody & Co.*, 615 F.Supp. 1217, 1222 (E.D.Mo.1985). There are only two elements of the § 12(2) claim that are disputed. The defendants argue that they did not make any false or misleading statements, nor did they omit a material fact. They also contend that they did not know and could not have known that oil production would fall.

Unlike a 10b–5 action, a § 12(2) claim ordinarily need not be supported by an allegation of "justifiable reliance" on the purchaser's part. Nonetheless, the "total mix" view of the disclosed information has been applied to claims under § 12(2) as part of the "materiality" analysis. *See, e.g., Kademian v. Ladish Co.*, 792 F.2d 614, 621 n. 6, 623–25 (7th Cir.1986). Consequently, the same disclosures of raw data on production histories and choke hole size changes which defeated Acme's 10b–5 claim are equally fatal to the negligent misrepresentation claim under § 12(2). The concept underlying these securities law provisions is disclosure and that is what occurred here, albeit in a somewhat obscure manner. The information to rebut the alleged oral misrepresentations was available to Acme, however, and that made the total mix of information more complete. We observe, in addition, that the alleged omissions regarding Michigan gas regulations are no more material under § 12(2) than under 10b–5. Accordingly, we rule that Acme's complaint fails to state a claim under § 12(2) and dismiss Count III pursuant to Fed.R.Civ.P. 12(b)(6).

Because the remaining counts are brought solely as pendent state law claims, we dismiss them as well for lack of an independent basis for federal subject matter jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

------

For the foregoing reasons, we allow the defendants' motion to dismiss Counts I and III for failure to state a claim under federal securities law. The remaining pendent

8. Both wells are located in Michigan.

148

counts are dismissed for lack of subject matter jurisdiction. It is so ordered.